UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| THE CINCINNATI INSURANCE COMPANY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:09CV00396 ERW |
|  | ) |  |
| PAUL STOLZER, d/b/a P&G CONSTRUCTION and MARY ANN DUFFEY, | ) ) ) |  |
|  | ) |  |
| Defendants. | ) |  |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment [doc. #14],[1] Defendants' Motion to Dismiss Count II of Plaintiff's Complaint [doc. #23], and Plaintiff's Motion for Summary Judgment [doc. #25]. The Court heard arguments from the parties on the motions for summary judgment at a hearing held on November 12, 2009.

**I.   BACKGROUND**[2]

This litigation is the result of a state court judgment resolving a lawsuit between the two named Defendants, a judgment which Plaintiff The Cincinnati Insurance Company ("Cincinnati") claims it is not required to satisfy under the terms of an insurance policy it issued to Defendant Paul Stolzer ("Stolzer").

---

[1] Although titled "Separate Defendant Mary Ann Duffey's Motion for Summary Judgment," the motion is argued and titled in supporting memoranda as if made on behalf of both Defendants. The Court concludes that it will treat the Motion as such, noting that Defendants are represented by the same counsel.

[2] The Court's recitation of the facts is drawn from the parties' statements of material facts filed in conjunction with the motions for summary judgment listed above.

The underlying suit arose out of an oral contract between Defendant Mary Ann Duffey ("Duffey") and Stolzer, a general contractor doing business as P&G Construction, with Stolzer agreeing to design and construct a house for Duffey on a piece of property in Ste. Genevieve County, Missouri. After a third-party company had completed the excavation of the basement and crawlspace area, Duffey asked Stolzer to have the soil on the property tested, as she had problems with a previous home caused by soil conditions. Stolzer responded that he was aware of her prior issue, but that he could address it through other means and testing would therefore not be necessary.[3] After Stolzer had completed construction and Duffey had moved into her new home, it became apparent that a soil condition known as plastic soil – characterized by soil that expands and contracts – was causing structural damage to the residence.

Duffey subsequently brought suit against Stolzer in the Circuit Court of Washington County, Missouri, asserting claims for strict liability, negligence, and breach of implied warranty.[4] Cincinnati, Stolzer's insurer under a policy of commercial general liability insurance ("the CGL policy"), accepted Stolzer's defense with a reservation of rights. The matter proceeded to trial and resulted in a bench verdict in favor of Duffey for $423,399.85 on the strict liability and negligence counts. The court's judgment also incorporates a prior agreement between Duffey and Stolzer to limit any recovery she might obtain to the proceeds of the CGL policy and any other insurance available to Stolzer, ostensibly pursuant to Mo. Rev. Stat. § 537.065. Although § 537.065 provides for the enforceability of such agreements, it only authorizes them with respect

---

[3] There is no indication in the record as to precisely what problem Duffey had, only that it was soil-related.

[4] Duffey also brought claims against the third-party excavator, Jokerst Inc., and Glenda Stolzer, both of whom were dismissed from the suit before trial.

to "unliquidated claim[s] for damages against a tort-feasor, on account of bodily injuries or death."

Cincinnati then brought this two-count suit against Duffey and Stolzer, asserting that it is entitled to a declaratory judgment that (1) the CGL policy does not obligate it to satisfy the state court judgment; and (2) the state court judgment is void and unenforceable. Defendants now ask the Court to dismiss Cincinnati's Count II concerning the enforceability of the state court judgment, and the parties also move for summary judgment on both counts.

## II. MOTION TO DISMISS

### *A. Legal Standard*

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give a short and plain statement "plausibly suggesting . . . that the pleader is entitled to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007). Under this standard, a claim is facially plausible where "the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (internal citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). That said, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal alterations and citations omitted). Thus, application of this standard suggests a two-step analysis under which the court may first (1) determine whether there are factual allegations in the complaint sufficient to entitle the plaintiff to "the assumption of truth," and if so, (2) "a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. 1937, 1950.

### B. Discussion

Defendants argue that Cincinnati's Count II, for a declaratory judgment that the state court's judgment is unenforceable, should be dismissed because (1) Cincinnati lacks standing to challenge the parties' agreement, as incorporated in the judgment, either on grounds of illegality or otherwise; and (2) Cincinnati's claim is an impermissible collateral attack on the judgment. Cincinnati responds that it is not attacking the agreement, but rather is asserting that the entire judgment is void, which is a proper grounds for a collateral attack. More specifically, Cincinnati claims that the state court lacked subject matter jurisdiction because (1) Duffey failed to state claims under Missouri law for the relief the trial court awarded; and (2) the court exceeded its statutory authority by allowing the parties to agree to limit Duffey's recovery to the proceeds of Stolzer's insurance, pursuant to Mo. Rev. Stat. § 537.065, as that statute only permits such agreements with respect to unliquidated tort claims arising out of bodily injuries or death.

A judgment is generally not subject to collateral attack; the proper method for contesting the validity of a judgment is by direct appeal. *Reid v. Steelman*, 210 S.W.3d 273, 282 (Mo. Ct. App. 2006). Where the issuing court lacks personal or subject matter jurisdiction, however, its judgment "is entitled to no respect, binds no one and may be collaterally attacked whenever or wherever it comes in the way." *Barry, Inc. v. Falk*, 217 S.W.3d 317, 321 (Mo. Ct. App. 2007) (internal quotations and citations omitted); *see also Reid*, 210 S.W.3d at 281-82. A court's subject matter jurisdiction – which is what Cincinnati asserts was lacking – refers to its "authority to render a judgment in a particular category of case." *J.C.W. ex rel. Webb v. Wyciskalla*, 275

S.W.3d 249, 253 (Mo. 2009). The Missouri Constitution, art. V, § 14(a) grants state circuit courts subject matter jurisdiction "over all cases and matter, civil and criminal." *See also id.*

There is also Missouri authority suggesting that in addition to personal and subject matter jurisdiction, a court must also possess "jurisdictional competence" – the authority "to render the particular judgment in the particular case." *See Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 21 (Mo. 2003) ("A court's authority to adjudicate a controversy is based on three essential elements; the court must have jurisdiction of the subject matter, jurisdiction of the res or the parties, and jurisdiction to render the particular judgment in the particular case."); *see also In re Marriage of Hendrix*, 183 S.W.3d 582, 588 (Mo. 2006) (discussing the concept). Following this reasoning, if a court of general jurisdiction acts under a grant of special statutory power and exceeds the scope of that authority, its judgment is void for lack of jurisdiction – what some courts have called a lack of subject matter jurisdiction. *See, e.g.*, *Mo. Soybean Ass'n*, 102 S.W.3d at 22 (Missouri Administrative Procedure Act only provides for declaratory judgment actions to challenge the validity of administrative rules, Mo. Rev. Stat. § 536.050.1, therefore no subject matter jurisdiction to enter a declaratory judgment if the matter challenged is not a rule); *State ex rel. King v. Kinder*, 690 S.W.2d 408, 409 (Mo. 1985) (court order granting stay of administrative action, pending trial de novo of administrative matter pursuant to statutory remedy, was void for lack of jurisdiction because statute expressly prohibited granting stay); *Bullmaster v. Krueger*, 151 S.W.3d 380, 385 n.5, 385-86 (Mo. Ct. App. 2004) (trial court did not have jurisdiction to impose mechanic's lien because plaintiff failed to comply with statutory notice requirements).

Even if these decisions would be applicable to the facts of this case – a conclusion about which the Court is extremely skeptical[5] – the Missouri Supreme Court has recently explained that the concept of jurisdictional competence is not truly jurisdictional in nature:

> Because the authority of a court to render judgment in a particular case is, in actuality, the definition of subject matter jurisdiction, there is no constitutional basis for this third jurisdictional concept for statutes that would bar litigants from relief. Elevating statutory restrictions to matters of "jurisdictional competence" erodes the constitutional boundary established by article V of the Missouri Constitution, as well as the separation of powers doctrine, and robs the concept of subject matter jurisdiction of the clarity that the constitution provides. If "jurisdictional competence" is recognized as a distinct concept under which a statute can restrict subject matter jurisdiction, the term creates a temptation for litigants to label every statutory restriction on claims for relief as a matter of jurisdictional competence.

*J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 254 (Mo. 2009). Thus, the Court concluded that "there is no third category of jurisdiction called 'jurisdictional competence,'" and a court therefore cannot lose subject matter jurisdiction by exceeding its authority under a particular statute. *Id.*; *see also Hoskins v. State*, 2009 WL 4907558, at *2-*3 (Mo. Ct. App. 2009) (recognizing that as a result of *J.C.W.*, cases permitting a party to attack a judgment on the grounds that the issuing court exceeded its statutory authority should no longer be followed).[6]

As such, if the trial court erred in awarding damages to which Duffey was not entitled or improperly incorporated the parties' agreement into the judgment pursuant to § 537.065, these

---

[5] It is the Court's view that § 537.065 does not grant any additional authority to courts; instead, it provides for the enforceability of a certain type of agreement, made in anticipation of and incorporated within the court's judgment. Because the statute acts on the parties to the agreement and not the court, the trial court would not have exceeded its authority in misapplying the statute, and the defect in the judgment would not concern the court's subject matter jurisdiction.

[6] Somewhat curiously, given the decisions cited above finding a lack of statutory authority to be a jurisdictional defect, the *J.C.W.* court indicates that Missouri courts have only addressed the topic of jurisdictional competence in *dicta*, 275 S.W.3d at 254, and therefore does not expressly overrule any prior authority.

6

are not defects related to the court's subject matter jurisdiction. Duffey's civil claims for strict liability and negligence were properly within the subject matter jurisdiction of the state trial court, and a court cannot lose this jurisdiction as a matter of Missouri law by improperly exercising its statutory authority. *See J.C.W.*, 275 S.W.3d at 254 ("The present case is a civil case. Therefore, the circuit court has subject matter jurisdiction and, thus, has the authority to hear this dispute."). The Court cautions, however, that it expresses no opinion as to whether the agreement executed pursuant to § 537.065 is enforceable; the Court only reaches the issue of whether the judgment is void because the state circuit court lacked subject matter jurisdiction, and finds that it is not.

The Court therefore concludes that Cincinnati's Count II, for a declaratory judgment that the state court's judgment in the underlying civil suit between Defendants is void, will be dismissed. Cincinnati's claim alleges that the judgment is void for lack of subject matter jurisdiction, but the Court finds that Cincinnati's arguments on that point do not allege jurisdictional defects as a matter of Missouri law. As a result, the Court's discussion of the parties' motions for summary judgment will be limited to Cincinnati's Count I.

### III. MOTIONS FOR SUMMARY JUDGMENT

#### A. *Legal Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. If the non-moving party has failed to "make a showing sufficient to establish the

existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In contract actions governed by Missouri law, a dispute as to the meaning of contractual terms does not necessarily render summary judgment inappropriate, as the interpretation of a contract is a question of law. *Wentzville Park Assocs., L.P. v. Am. Cas. Ins. Co. of Reading, Pa.*, 263 S.W.3d 736, 739 (Mo. App. E.D. 2008). Summary judgment should be denied, however,

where an ambiguity in a contract requires the fact-finder to examine parol evidence in order to determine the parties' intent. *Essex Dev., Inc. v. Cotton Custom Homes, L.L.C.*, 195 S.W.3d 532, 535 (Mo. Ct. App. 2006). That said, ambiguous provisions in insurance policies that purport to restrict coverage should be construed against the drafter and therefore in favor of coverage. *See, e.g.*, *Green v. Penn-America Ins. Co.*, 242 S.W.3d 374, 383 (Mo. Ct. App. 2007); *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 394 (Mo. Ct. App. 2007).

### B. Discussion

Plaintiff Cincinnati and Defendants Duffey and Stolzer move for summary judgment on Cincinnati's declaratory judgment claim concerning whether the incident that gave rise to the underlying suit is covered by the CGL policy Cincinnati issued to Stolzer. Defendants contend that damage caused by soil conditions is covered because it is an "occurrence"[7] of "property damage" – a covered event under the terms of the policy – in that Stolzer would have protected against it had he foreseen the possibility of plastic soil damaging the home. Plaintiff claims that the underlying event was not an unexpected "occurrence" because Duffey specifically asked Stolzer to test the soil conditions and he declined to do so. In the alternative, Cincinnati argues that the CGL policy's exclusions preclude recovery on the judgment.[8] Defendants, as the parties

---

[7] The use of quotation marks indicates that the term is defined in the CGL policy.

[8] Cincinnati also claims that Duffey cannot collect on the judgment because Duffey, in a related garnishment action against Cincinnati, failed to file exceptions to Cincinnati's denial of coverage in response to her interrogatories. In Cincinnati's view, her failure to do so constitutes an admission of lack of coverage that is binding on her in this subsequent proceeding. The Missouri Supreme Court recently held, however, that Missouri Supreme Court Rule 90.07(c), stating that a garnishee's interrogatory answers are conclusively binding on the garnishor if the garnishor fails to make timely exceptions, does not apply to bind the garnishor in subsequent non-garnishment proceedings. *Moore Auto. Group, Inc. v. Goffstein*, 2009 WL 4927353, at *5 (Mo. 2009) (failure to file exceptions is a judicial admission that, although binding in the proceeding in which made, may be explained or contradicted in later proceedings). The court also noted that the failure to file such exceptions constitutes abandonment of the action, making claim and issue

9

asserting coverage in this declaratory judgment action, bear the burden of proving that the CGL policy coverage applies. *Auto. Club Inter-Ins. Exchange v. Medrano*, 83 S.W.3d 632, 638 (Mo. Ct. App. 2002); *see also Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 792 (Mo. Ct. App. 2006).

The policy, in relevant part, provides coverage for "property damage" caused by an "occurrence," which the policy defines as "an accident, including continuous or repeated exposure to substantially the same harmful condition." Missouri courts interpreting largely identical CGL policy provisions have found that the ordinary meaning of "accident," as used to define "occurrence," is

> An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by an accident.

*Columbia Mut. Ins. Co. v. Epstein*, 239 S.W.3d 667, 672 (Mo. Ct. App. 2007) (internal citations omitted). "It is well-settled Missouri law that when a [CGL] 'liability policy defines occurrence as meaning accident[,] Missouri courts consider this to mean injury caused by the negligence of the insured.'" *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 393 (Mo. Ct. App. 2007) (quoting *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 49 (Mo. Ct. App. 1998)). Indeed, "[w]hen used without restriction in liability policies, 'accident' has been held not to exclude injuries resulting from ordinary, or even gross, negligence." *Wood*, 980 S.W.2d at 49 (quoting *N.W. Elec. Power Coop., Inc. v. Am. Motorists Ins. Co.*, 451 S.W.2d 356, 364 (Mo. Ct. App. 1969)). That said, in determining whether a particular event was an "accident" and therefore an "occurrence," the focus is "the insured's foresight or expectation of the injury or

---

preclusion principles inapplicable because there is no final judgment on the merits. *Id.* at *5 n.4.

damages." *Epstein*, 239 S.W.3d at 672 (internal citations omitted).[9] Thus, the fact that Stolzer may have been negligent in failing to order soil testing does not necessarily mean that the damage to Duffey's home was not an "occurrence," but if he foresaw the possibility of plastic soil damage, then the incident would *not* be an "occurrence."

In support of their argument that the damage caused by plastic soil was in fact an "occurrence" / "accident," Defendants rely heavily on *Epstein*, in which the Missouri Court of Appeals found that damage caused by a contractor's use of defective concrete would be an "occurrence" under the contractor's CGL policy, such that the contractor's insurer would have a duty to defend him against the homeowner's products liability suit. *Id.* at 672-73. As the court explained:

> The facts alleged in the [plaintiffs'] second amended petition would have allowed them to show that [the contractor] sold and delivered to the [plaintiffs] concrete for a basement foundation, that through no fault of [the contractor], the concrete was defective, that the defective nature of the concrete damaged the sub-floor and framing of the home in that it all had to be torn down and replaced, and that neither the defect in the concrete nor the damage to the home was foreseeable to [the contractor].

*Id.* Like the contractor in *Epstein* who could not foresee that the concrete he used would be defective, Defendants claim that Stolzer's decision not to order soil testing shows that he did not foresee the possibility of plastic soil, and that the resulting damage was therefore an "accident."

---

[9] The parties also discuss Missouri authority finding that where an insured's action amounts to a breach of contract, it is not an "occurrence" or "accident" as those terms are used in CGL policies. *See, e.g.*, *Am. States Ins. Co. v. Mathis*, 974 S.W.2d 647, 650 (Mo. Ct. App. 1998); *Hawkeye-Security Ins. Co. v. Davis*, 6 S.W.3d 419, 426 (Mo. Ct. App. 1999); *St. Paul Fire & Marine Ins. Co. v. Building Constr. Enters., Inc.*, 484 F. Supp. 2d 1004, 1010-11 (W.D. Mo. 2007) (applying Missouri law). Because the underlying action was not for breach of contract, and because the parties have not presented any evidence or detailed briefing as to whether the damage to Duffey's home would have given rise to such a claim, the Court declines to attempt to apply these principles to the present case.

The problem with Defendants' argument is that the undisputed facts establish that Stolzer was on notice of the potential of soil-related problems. Those undisputed facts are (1) that Duffey asked Stolzer to perform soil testing, (2) that Stolzer responded that he was aware of the problem with her prior residence, and (3) that he told her that testing was unnecessary because he could correct that problem. Although there is no evidence as to what that problem was, other than it was soil-related, these facts demonstrate that Stolzer made a considered decision not to order soil testing, and that he knew that certain soil conditions could result in damage to a home. Thus, when Duffey's home was ultimately damaged by expanding and contracting soil, it was not "[a]n event that [took] place without [Stolzer's] foresight or expectation" or an "unforeseen occurrence of an afflictive or unfortunate character." *Id.* at 672. Stolzer's apparent belief that soil testing was unnecessary does not, contrary to Defendants' arguments, mean that any soil-related damage was unforeseeable; to the contrary, his awareness of Duffey's concern, given her past "problem" with soil conditions, is precisely what makes the result foreseeable.

Furthermore, accepting Defendants' position would lead to absurd results. For example, imagine that Duffey contracts with Stolzer to have him build her a home on a piece of property located on a flood plain, and asks him to build the house on stilts because it might flood in high water conditions. Stolzer assures her that is unnecessary, as he can build the home so that it will be protected against high water. By Defendants' logic, if a flood subsequently damages the home, then it is an unforeseeable "accident," in that Stolzer would have simply built the house on stilts if he had foreseen that sort of damage. Where a person makes a conscious decision with respect to a known risk, he cannot later claim that it was unforeseeable that the risk would be realized. Thus, the damage to Duffey's home caused by plastic soil was not an "accident"; Stolzer knew

12

that soil conditions could cause such problems, but was simply unwilling or unable to adequately protect against that risk when constructing the house.[10]

The Court therefore concludes that Cincinnati is entitled to summary judgment on its claim for a declaratory judgment that the CGL policy issued to Stolzer does not require Cincinnati to satisfy Duffey's state court judgment against him. The policy only provides coverage for property damage caused by an "occurrence," defined as an "accident," and the undisputed facts demonstrate that the damage to Duffey's home was not an unforeseen or unexpected event, but rather was a known risk against which Defendants were unfortunately unable to protect.

## IV. CONCLUSION

Defendants' Motion to Dismiss Count II of Cincinnati's Complaint, alleging that Duffey's underlying state court judgment against Stolzer is void for lack of subject matter jurisdiction, will be granted. The state trial court properly had subject matter jurisdiction over Duffey's civil claims for, among other things, strict liability and negligence, and the court's supposed misapplication of Missouri law is not a defect in subject matter jurisdiction that would result in a void and unenforceable judgment.

Cincinnati's Motion for Summary Judgment on its Count II, however, will be granted, and Defendants' Motion for Summary Judgment, as it concerns that Count, will be denied. Cincinnati is entitled to a declaratory judgment that it is not required satisfy the state court judgment against Stolzer, as the undisputed facts establish that the damage to Duffey's home – the subject of the underlying suit – was not a covered "occurrence" under the terms of the CGL policy Cincinnati issued to Stolzer.

---

[10] The Court does not wish to suggest that the CGL policy does not cover Duffey's loss because Stolzer was at fault for the damage, as that is not the issue before the Court. The Court only concludes that the incident was foreseeable, and therefore not an "accident."

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Count II of Plaintiff's Complaint [doc. #23] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [doc. #14] is **DENIED**.

**IT IS FURTHER ORDERED** that Cincinnati's Motion for Summary Judgment [doc. #25] is **GRANTED, in part** and **DENIED, in part**. The Motion is granted with respect to Count I of Cincinnati's Complaint, and otherwise denied as moot.

Dated this 5th Day of February, 2010.

                                        E. RICHARD WEBBER
                                        UNITED STATES DISTRICT JUDGE